# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
COOK, GALLAGHER, and HAIGHT
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Specialist MAC D. WARNER**
**United States Army, Appellant**

ARMY 20100398

Headquarters, V Corps
Wendy P. Daknis, Military Judge
Colonel Flora D. Darpino, Staff Judge Advocate (pretrial)
Lieutenant Colonel Matthew M. Miller, Acting Staff Judge Advocate (post-trial)

For Appellant: Colonel Patricia A. Ham, JA; Lieutenant Colonel Imogene M. Jamison, JA; Major Jacob D. Bashore, JA; Captain Kristin McGrory, JA (on brief).

For Appellee: Major Amber J. Roach, JA; Major Katherine S. Gowel, JA; Captain Kenneth W. Borgnino, JA (on brief).

3 January 2013

-------------------------------------------------------
SUMMARY DISPOSITION ON REMAND
-------------------------------------------------------

HAIGHT, Judge:

A military judge, sitting as a general court-martial, convicted appellant, contrary to his pleas, of one specification of aggravated sexual contact with a child and two specifications of indecent language, in violation of Articles 120 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 920, 934 (2006) [hereinafter UCMJ]. The military judge sentenced appellant to a dishonorable discharge, confinement for eighteen months, total forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority approved the adjudged sentence and deferred forfeitures of pay and allowances effective 25 May 2010 until action on 22 October 2010.

On 24 May 2012, we issued an opinion in this case affirming the findings of guilty and the sentence. *United States v. Warner*, ARMY 20100398, 2012 WL 1944798, at *1 (Army Ct. Crim. App. 24 May 2011) (summ. disp.). On 14

September 2012, our superior court reversed our decision as to Specifications 4 and 7 of Charge II and as to the sentence, and returned the record of trial to The Judge Advocate General of the Army for remand to this court for further consideration in light of *United States v. Humphries*, 71 M.J. 209 (C.A.A.F. 2012). *United States v. Warner*, 71 M.J. 399 (C.A.A.F. 2012) (summ. disp.). Consequently, appellant's case is again before this court for review under Article 66, UCMJ.

Much like the specification at issue in *Humphries*, it was plain and obvious error for the government to fail to allege the terminal element of Article 134, UCMJ, in Specifications 4 and 7 of Charge II. *See Humphries*, 71 M.J. at 214. While Specifications 4 and 7 of Charge II were defective, "it does not constitute structural error subject to automatic dismissal." *Id.* at 212. Instead, we must resolve "whether the defective specification[s] resulted in material prejudice to [appellant's] substantial right to notice." *Id.* at 215. To resolve this issue, we must closely review the trial record. *Id.*

Close review of the trial record in this case reveals that appellant was on notice of the missing terminal elements. *Id.* at 215–16.

First, the terminal element required for the Article 134, UCMJ, indecent language specifications was discussed by the Article 32, UCMJ, investigating officer (IO) in his memorandum to the appointing authority. Specifically, he recommended maintaining Specification 7 of Charge II with the following rationale, "It is clear that SPC Warner was representing himself as a member of the Armed Forces, as Ms. [EH] visited the Baumholder military community, and was well aware that he was a member of the Armed Forces." In contrast, the IO recommended dropping Specification 4 of Charge II because "[t]here is a lack of evidence to support that the accused represented himself as a member of the Armed Forces, thereby, not bringing discredit upon the Armed Forces."

Second, appellant's defense counsel filed a pretrial motion to dismiss Specification 7 of Charge II for failure to state an offense, alleging the language was not indecent. Appellant's pleading contained the following paragraph:

> The January 2010 DA PAM 27-9 lists the elements of Indecent Language Communicated to Another (Article 134) as:
>
> (1) That (state the time and place alleged), the accused (in writing) communicated to (state the name of the alleged victim), certain language, to wit: (state the language alleged);
>
> (2) That the language was indecent; and

2

(3) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

The government responded to appellant's motion to dismiss and, like the defense, listed the required elements, to include the terminal element, of the indecent language specifications.

Third, Special Agent (SA) CS testified that he viewed appellant's online internet profiles during the course of his investigation. He stated appellant "had many different profiles on social networking sites such as MySpace, Facebook . . . MilitaryLoveLinks, TAG.com, BVO.com." In fact, SA CS noticed photographs of appellant in "semi-military attire" on his MySpace account and that appellant was in "full military attire identifying himself in some cases as Mac Warner or abbreviations of his name" in other online profiles. These profiles contained the indecent chat logs at issue, and appellant met one of the recipients of his indecent language on the website MilitaryLoveLinks.com. This aspect of SA CS's testimony, referring to appellant's military status and uniform, would have been irrelevant but for the need to prove the terminal element contained in Article 134, UCMJ.

Fourth, appellant made a motion for a finding of not guilty pursuant to Rule for Courts-Martial 917. During argument on the motion, appellant's defense counsel argued that "there was no evidence that [AD] had the actual chats, and that she heard or read the chats that are listed in Charge II and Specification 4, or that it had a service discrediting effect on her." Likewise, with respect to Specification 7 of Charge II, appellant's defense counsel argued "there was no testimony by Ms. [EB] that the chats that she had with the accused were service discrediting." In response to appellant's motion, the government argued as follows:

> As far as the evidence of a service discrediting nature, the actual Manual, the UCMJ says that it doesn't require you to actually show that there has been discredit, and that somebody can come in and say, 'My view of the Army is now lower because of this chat.' It's any tendency to bring discredit upon the Armed Services, and there is plenty of evidence presented to you to show that there is a tendency to bring discredit.

Fifth, the government addressed the terminal element during its findings argument:

> The real question I guess is: Is the type of language that you see in those chats the type of language which has a

3

> tendency to discredit the armed services? My question, I guess, is: Is there any real question that this type of online chatting would have a tendency to lower the esteem of the armed services? This type of chatting is so disgusting it's criminal in any civilized society. That in of itself makes it service discrediting.

Finally, appellant's defense counsel presented the following during its findings argument:

> As to the second charge, Specification 7, all of the writings between Specialist Warner and Mrs. [EB] if shown to the military community would not rise to the level of obscene. Furthermore, Mrs. [EB] never said she thought less of the military because of Specialist Warner's writings.
>
> As to the other specifications, there is only one named recipient, Ms. [AD], and we don't know because the government didn't bring Ms. [AD] as a witness, if Ms. [AD] knew that Specialist Warner was in the military, nor do we know if she thinks less of the military because of the communication.

This argument by defense counsel was only germane to the terminal element and not to either of the other elements of communicating indecent language to another as clearly identified by both parties in the pretrial pleadings filed in this case.

Under the totality of the facts of this case as identified above, we are convinced that the record of trial demonstrates appellant had sufficient notice of the terminal element and the theory of criminality pursued by the government as it pertained to Specifications 4 and 7 of Charge II. *See Humphries*, 71 M.J. at 216 (finding that "[n]either the specification nor the record provides notice of which terminal element or theory of criminality the Government pursued in this case"). In fact, appellant's primary trial strategy was to argue the lack of any link between the indecent chats and the public's perception of the military. Simply put, there was no surprise or lack of notice as to the Article 134, UCMJ, terminal element in this case. Therefore, appellant did not suffer prejudice due to the omission of the terminal elements from Specifications 4 and 7 of Charge II.

## CONCLUSION

On consideration of the entire record and in light of *United States v. Humphries*, 71 M.J. 209 (C.A.A.F. 2012), we hold the findings of guilty and the

sentence as approved by the convening authority correct in law and fact. Accordingly, the findings of guilty and the sentence are AFFIRMED.

Senior Judge COOK and Judge GALLAGHER concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court